James R. **FAIRCHILD,** Plaintiff–Appellant,

v.

**FORMA SCIENTIFIC, INC.** and Life Sciences International, Inc., Defendants–Appellees.

No. 97–2947.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1998.

Decided June 10, 1998.

---

T. Evan Schaeffer (argued), Carey & Danis, St. Louis, MO, for Plaintiff–Appellant.

Robert J. Tomaso (argued), Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, MO, Robert L. Jackstadt, Peper, Martin, Jensen, Maichel & Hetlage, Belleville, IL, for Defendants–Appellees.

Before CUMMINGS, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

James R. Fairchild sued his former employer, Forma Scientific, Inc. ("Forma") alleging that Forma fired him because of his age and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Fairchild also alleged that Forma denied him disability benefits in violation of the Employee Retirement In-

come Security Act ("ERISA"), 29 U.S.C. § 1101 et seq. Fairchild sued Life Sciences for the ERISA violation, alleging that Life Sciences is "an affiliate" of Forma, that both companies "exercise functional control over the administration" of Life Sciences' health benefit plan, and that the two companies are "sister corporations ... owned or controlled by Life Sciences International PLC of London." The district court granted summary judgment on each count in favor of Forma and on the ERISA count in favor of Life Sciences. Fairchild appeals. Because we find that Fairchild failed to demonstrate a genuine issue of material fact regarding pretext in the ADEA claim, that Fairchild's ADA claim was not timely filed, and that Fairchild cannot support his ERISA claim, we affirm the district court's grant of summary judgment.

## I. History

Fairchild worked as a salesman for Forma from 1983 until his termination in 1994. Art Fad was his direct supervisor. In 1990, Fad promoted him to Regional Sales Manager for the Central Region, an area encompassing fourteen midwestern states. At this time, Fad told Fairchild that being Regional Sales Manager for the Central Region was the most difficult job at Forma. Fairchild continued to report to Fad, while Fad reported to Doug Bergen, Forma's Senior Vice President of Sales and Marketing.

Fairchild experienced performance problems in his new position. For example, in 1991 the Central Region met only 81% of its quota. In response to concerns raised by Fairchild, Forma reduced the region's quota for the following years. During the same time period, the other regions had their quotas increased. Notwithstanding this decrease in expectations, in 1992 and 1993 the Central Region again failed to meet quota. In the years Fairchild managed the Central Region, it consistently finished last in the company in sales.

Throughout this time period, Fairchild received performance reviews from Fad. Fad consistently indicated that he expected the region to show improvements and warned Fairchild about his performance. However, Fairchild always received annual salary increases. In December 1993, Fad told Fairchild that if the Central Region did not show improvements in the first half of 1994, Fairchild's position in the company would not be secure. Fairchild's March 1994 review again listed his performance as unsatisfactory.

Fad also had concerns about Fairchild's requests for expense reimbursements. Specifically, on February 17, 1994, Fad questioned Fairchild about a receipt Fairchild submitted dated March 2, 1994. Fad was concerned because it appeared that Fairchild was submitting receipts for expenses that had yet to be incurred.

In the early 1990s, Fairchild experienced breathing difficulties. He was diagnosed with chronic obstructive pulmonary disease, a potentially fatal lung disease. Fad pursued disability benefits for Fairchild. Specifically, Fad asked Bergen and Craig Piersall, Forma's Vice President for Human Resources, whether "disability were an option" for Fairchild. Fad testified in his deposition that "there wasn't much response" from Bergen and Piersall. Fad then went to Lewis Rosenblum, the President of Forma. Rosenblum wanted to know what Fad was doing about Fairchild's performance. When Fad asked Rosenblum about Fairchild "going on disability," Rosenblum responded, "Fuck him." Fad had no other conversations with Rosenblum, Piersall, or Bergen about Fairchild's medical condition or the possibility of disability benefits.

During the spring of 1994, Forma's management notified Bergen that he needed to make substantial cuts in his sales and marketing budget. Bergen decided to restructure his sales force by terminating Fairchild's employment, reassigning the Central Region to the Manager of the Western Region and assuming the duties in the Western Region himself. Bergen also terminated Fad.

Bergen communicated the decision to Fairchild by phone in May 1994. Fairchild was fifty-four years old at the time. Bergen told Fairchild that he was not being terminated "for cause" and that Bergen would act as a reference for Fairchild.

In June 1994, Fairchild filed an age discrimination charge with the Illinois Human Rights Commission and the United States Equal Employment Opportunity Commission ("EEOC"). In October 1995, Fairchild amended his discrimination charge, alleging that he had been selected for termination because of his age and because of his disability. In January 1996, the EEOC issued Fairchild a right-to-sue letter. This suit followed.

## II. ANALYSIS

### A. Summary Judgment Standard

■ We review a district court's grant of summary judgment de novo, drawing our own conclusions of law and fact from the record before us. See Thiele v. Norfolk & Western Ry. Co., 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," Anderson, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. Fairchild's ADEA Claim

■ The ADEA prohibits employers from engaging in discrimination "because of [an]

individual's age," 29 U.S.C. § 623(a)(1), but limits the class of persons protected by the statute to those persons 40 years of age and older. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). To succeed in an ADEA claim, a plaintiff must establish that he would not have been terminated "but for" his employer's intentional age-based discrimination. See Konowitz v. Schnadig Corp., 965 F.2d 230, 232 (7th Cir.1992).

A plaintiff may prove age discrimination in two ways. " 'She may try to meet her burden head on by presenting direct or circumstantial evidence that age was the determining factor in her discharge. Or, as is more common, she may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), ... and later adapted to age discrimination claims under the ADEA.' " McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 371 (7th Cir.1992) (quoting Oxman v. WLS–TV, 846 F.2d 448, 452 (7th Cir.1988)).

■ Fairchild does not contend that he has direct evidence of discrimination. Instead, he focuses on the McDonnell Douglas approach. In order to prevail under the burden-shifting approach, a plaintiff must initially establish a prima facie case of discrimination. "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion....' " O'Connor, 116 S.Ct. at 1310, 116 S.Ct. 1307 (quoting Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (emphasis in O'Connor removed). To establish such a case under the ADEA, Fairchild must show (1) he was in the protected age group of 40 or older, (2) he was performing his job satisfactorily, (3) he was discharged, and (4) substantially younger, similarly-situated employees were treated more favorably.[1] See Maier v. Lucent Technologies,

---

1. This Circuit has employed various formulations of the fourth element, "largely as a result of 'the different types of age discrimination cases that arise.' " Mills v. First Fed. Sav. & Loan Ass'n, 83 F.3d 833, 843 n. 6 (7th Cir.1996) (quoting Gadsby v. Norwalk Furniture Corp., 71 F.3d 1324, 1331 (7th Cir.1995)). Because we resolve this case on the basis of pretext and assume satisfac-

120 F.3d 730, 734 (7th Cir.1997); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996); *see also O'Connor*, 116 S.Ct. at 1310.

■■■ A successful prima facie showing creates a presumption of discrimination that obligates the employer to produce a legitimate non-discriminatory reason for its decision. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). Production of this legitimate nondiscriminatory reason rebuts·this presumption of discrimination, *see Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir.1994), shifting the burden back to the employee to show that the employer's stated.reasons for its action are pretextual. *See Denisi*, 99 F.3d at 864. A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993).

■■■ Despite these shifting burdens of production, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the plaintiff is unable to meet this·burden, his claim fails. *See Sarsha*, 3 F.3d at 1039.

■■■ The parties dispute whether Fairchild satisfies the second requirement of the prima facie case: whether Fairchild was performing his job satisfactorily. We need not resolve this dispute because we can decide this case on other issues. *See EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149–50 (7th Cir.1996) ("[T]his court may advance· to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case."); *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711,

715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) ("[T]he prima facie threshold is no longer a relevant issue·once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination."). Because we find that Forma has met its burden of articulating legitimate reasons for the discharge, we proceed directly to whether Fairchild presented evidence sufficient to create a genuine issue of material fact with regard to pretext.

Forma presented a legitimate, non-discriminatory reason for Fairchild's termination: faced with a mandate to reduce its sales and marketing budget, Bergen selected Fairchild for termination because of his consistent problems with performance, such as failing to meet quota. *See Baxter Healthcare Corp.*, 13 F.3d at 1125–26 (Employer does not violate ADEA by ·terminating employee to reduce costs.). Forma's production of this reason shifts the burden to Fairchild to prove that the stated reason is simply a pretext for age discrimination.

■■■ We first note that Fairchild has a "tough row to hoe" because he was terminated by a person six years older· than he is. While persons of any age are capable of age discrimination, that the decision maker is older than the terminated employee is certainly significant in evaluating the evidence of discrimination. *See Mills*, 83 F.3d at 842. It is not, however, dispositive. *See id.*

Fairchild first attempts to show that Forma's reason is pretextual by disputing whether a "reorganization" occurred at all. Instead, Fairchild characterizes the occurrence as follows: "a few employees were fired, and some territorial lines redrawn." As further evidence that there was no "reorganization," Fairchild asserts that these changes were temporary and that the organization is back as it was at the time of Fairchild's departure.

tion of the prima facie case, we have no reason to examine "the various permutations and re-

quirements associated with the fourth and final element." *Id.*

We "do[ ] not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). Our job is to determine "whether the employer gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987). Establishing whether Forma's actions are properly labeled a "reorganization" does not assist us in this inquiry. Fairchild does not challenge the fact that Bergen was asked to reduce his budget; assuming this is true, it makes little difference to Fairchild's age discrimination claim whether the way Bergen carried out this mandate was through a "reorganization" properly so called or through firing a couple people and temporarily redrawing territorial lines.

Fairchild next argues that his performance problems were exaggerated in the company documentation, and therefore the performance issues could not have been dispositive in his termination. In his deposition, Fad stated that toward the end of Fairchild's employment, he was feeling· pressure to fire Fairchild, so his written criticisms did not necessarily reflect the way he really felt about Fairchild's performance. Even if we assume this is true, Fairchild must still contend with his poor reviews from previous years (i.e. those that were not "toward the end" of his employment) and the fact that while he managed the Central Region it always placed last in the company. These two reasons by themselves are sufficient to support Bergen's decision to terminate Fairchild instead of one of the other managers or sales staff. Fairchild cannot establish age discrimination simply by suggesting that, in the final months of his employ, his performance was not as bad as his reviews may suggest.

Fairchild also tries to minimize the importance of his performance problems by pointing to Fad's statement that he was "a competent manager," that he received annual salary increases, and that his region was historically difficult. Again, these statements do not suggest that Bergen's reason for terminating him were pretextual. Being "competent" does not necessarily establish that the employee is doing his job well, or even

up to the employer's legitimate expectations. An employer may give annual salary increases as an incentive for future performance, and therefore the fact Fairchild received such increases does not suggest that he was performing adequately. Finally, regardless of whether the Central Region was historically a difficult region to manage, Forma could legitimately expect a certain level of success which Fairchild consistently failed to meet. This evidence does not establish that Fairchild did not have performance problems such that Bergen's reason for firing Fairchild was pretextual.

Fairchild's final argument regarding his performance revolves around Bergen's statement that he was not fired "for cause." Fairchild's argument is that if he was not fired for cause, then he must not have been having performance problems that would justify a termination, so Bergen's reason must be pretextual. It is at least possible that Fairchild would not have been fired absent the impetus of a shrinking budget. However, this conclusion does not assist Fairchild. In a reduction in force, someone has to go. It is usually the least qualified or least productive employee. Fairchild's performance problems made him the most eligible candidate for termination when Bergen compared him to other employees. That Bergen may not have fired Fairchild absent the financial pressure does not establish that his reason for terminating Fairchild was pretextual.

Fairchild offers one other piece of evidence to suggest that Forma's reasons for firing him were pretextual. He alleges that Forma had a company-wide policy of treating older employees less favorably than younger ones. As evidence of this policy, Fairchild cites to his deposition, where he states that the CEOs of affiliated companies, as well as the President of Forma, were all around the age of forty. Additionally, Fairchild stated that he knew of someone a year or two older than he who was "let go." "It seemed like the trend was to go with the younger people and, therefore, I felt that that was somewhat discriminating." Fairchild Dep. at 76. Fairchild also stated that Fad told him that he (Fairchild) needed to hire younger people. Fairchild acknowledged that Fad denied say-

ing this, and later in his deposition Fairchild suggested that it might have been a misunderstanding.

▮ This evidence does not persuade us that Bergen's reason for firing Fairchild was pretextual. Fairchild does not connect this alleged trend with Bergen's decision to terminate him. While Fairchild may believe that the "trend" is evidence of age bias, "subjective beliefs of the plaintiff ... are insufficient to create a genuine issue of material fact." *McMillian v. Svetanoff,* 878 F.2d 186, 190 (7th Cir.1989). Even were we to believe that Fad suggested to Fairchild that Fairchild should hire younger employees, this statement also does not assist him. Assuming Fad did make the statement, it would be probative as to whether Fad harbored some kind of age animus. However, Fad did not terminate Fairchild. Bergen terminated Fairchild, and there is no evidence that Bergen shared Fad's view. *See Hoffman v. MCA, Inc.,* 144 F.3d 1117 (7th Cir.1998) (Statements of nondecision makers do not create genuine issues of material fact absent proof that non-decision maker's statement somehow tainted employment decision.).

Fairchild has given us no reason to believe that Forma's reason for terminating him is pretextual. We therefore affirm the district court's grant of summary judgment.

### C. *Fairchild's ADA Claim*

▮ The ADA adopts the enforcement procedures governing Title VII actions, including the filing procedures and timing requirements. *See* 42 U.S.C. § 12117(a). Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), requires that an aggrieved person file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. This period is extended to 300 days if the person aggrieved has first instituted proceedings with a state or local antidiscrimination agency. Failure to file within the allotted time renders the charge untimely and the claimant is precluded from bringing an action in court. *See Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705, 707 (7th Cir.1995). The period begins to run from the date of the adverse personnel action, which in this case is Fairchild's termi-

nation. *See Davidson v. Indiana–American Water Works,* 953 F.2d 1058, 1059 (7th Cir. 1992).

Fairchild is entitled to the longer period because he filed a charge with the Illinois Department of Human Rights. Thus, Fairchild had 300 days from May 2, 1994, the date of his termination, in which to file charges with the EEOC. Fairchild filed a timely charge for age discrimination on June 10, 1994, and later filed a charge for disability discrimination in October 1995. The October 1995 filing is outside the prescribed period and thus is not timely.

▮ Fairchild attempts to remedy this belatedness by arguing that his disability discrimination charge relates back to the date of the filing of his age discrimination charge. Under EEOC regulations:

A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b). Fairchild alleges that since his ADA charge arises from the same facts as the original ADEA charge, the ADA charge should relate back.

Fairchild's argument has some support in decisions from other circuits. *See Washington v. Kroger Co.,* 671 F.2d 1072, 1075–76 (8th Cir.1982) (allowing racial discrimination charge to relate back to date of sex discrimination charge); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 464 (5th Cir.1970) (allowing national origin discrimination charge to relate back to date of sex discrimination charge because "a charging party's failure to attach the correct legal conclusion to the factual allegations contained in a charge of discrimination is a mere technical defect").

However, other circuits have rejected this argument outright. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996) (denying relation back be-

cause "age discrimination does not necessarily flow from sex discrimination" and because "Title VII and ADEA claims arise from completely distinct statutory schemes"); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir.1988) (rejecting the argument that age discrimination claim arose from same subject matter as claim based on national origin because "Title VII and ADEA claims arise from entirely distinct statutory schemes" and the original charge contained no hint of age discrimination).

■ We have not previously addressed this issue. We now hold that, under the circumstances presented to us in this case, an untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge.

Fairchild's original charge recited few facts and alleged only age discrimination. His charge reads in full:

I was employed by Forma Scientific, Inc. from November 1, 1983 until I was discharged on May 2, 1994. My position at the time of discharge was Central Regional Sales Manager. My direct supervisor was the Vice President of Sales Art Fad. I am 54 years of age.

The reason I was given for my discharge was that due to low profits, the company was reorganizing. At about the same time I was discharged, three other employees over the age of forty were also discharged. I believe that I was discharged because of my age–54. This is a violation of my civil rights under the Age Discrimination in Employment Act (ADEA).

This charge contains no allegation of disability discrimination and includes no facts that would support such a conclusion absent its direct allegation.

Fairchild's amended charge is identical to the first charge with two exceptions. His amended charge alleges not only that he is 54 years old, but also that he has a disability. Additionally, the final line reads, "I believe that I was discharged because of my age, 54, and because of my disability." Fairchild would have us hold that this charge "alleg[es] additional acts which constitute unlawful employment practices related to or growing out

of the same subject matter of the original charge," such that the charge would relate back under the EEOC regulations. We decline to do so.

The regulation states that an amendment will relate back when it alleges additional acts related to or growing out of the same subject matter of the original charge. For example, a person who originally charged she was not promoted based on her sex could amend her complaint to allege that later she was fired on the basis of her sex. These are two acts, failure to promote and termination, which grow out of the subject matter of the original charge: sex discrimination. Here Fairchild alleges an additional basis for legal liability, not additional acts.

Even if we were to read the term "acts" broadly, Fairchild would still need to convince us that the "additional act" of disability discrimination was "related to" or grew out of the age discrimination charge. We cannot say that a disability discrimination claim grows out of an age discrimination claim. This is particularly the case because Fairchild did not support his charge with specific facts. Had Fairchild alleged facts that supported both claims, we may be more sympathetic. *See Sanchez*, 431 F.2d at 462 (finding inconceivable that "a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations"). Here Fairchild did not simply "fail[ ] to articulate correctly the legal conclusion emanating from his factual allegations" because he made factual allegations that could only support one kind of discrimination—discrimination based on age.

Additionally, policy arguments support this outcome in the present circumstances. The charge filing requirement ensures that the employer has adequate notice of the charges and promotes conciliation at the administrative level. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989); *Hicks v. ABT Assocs.*, 572 F.2d 960, 963 (3d Cir.1978). When Fairchild filed his first charge, both the EEOC and Forma were on notice only of an age claim. Neither had reason to investigate or consider a disability charge. While we do not know

whether the EEOC was able to launch an appropriate investigation of the disability discrimination claim, Forma alleges that it was not given an opportunity to respond to this charge before the EEOC. Forma's ability to defend its actions and the chances for conciliation were thus significantly reduced.

Allowing this belated charge to relate back to the original charge, absent any factual nexus to the original charge, would eviscerate the administrative charge filing requirement altogether and frustrate the purposes of the administrative scheme. Based on our reading of the regulation and our understanding of the policies supporting the charge-filing requirement, we hold that the disability discrimination charge does not relate back to the age discrimination charge. Thus the disability discrimination charge was filed outside the prescribed period, and Fairchild is precluded from bringing a claim under the ADA.

### D. Fairchild's ERISA Claim

■ Fairchild argues that Forma and Life Sciences wrongfully withheld certain health benefits from him in violation of ERISA. Forma alleges and Fairchild admits that he never applied for such benefits.

It is axiomatic that a plan participant must apply for the benefits to which he claims entitlement prior to suing for the wrongful denial of those benefits. However, we have dispensed with this requirement for participant's alleging a cause of action under ERISA's § 510, 29 U.S.C. § 1140. In *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139–40 (7th Cir.1992), we recognized that under certain circumstances an employee may have a § 510 claim for interference with collection of benefits "even though this employee never made a formal or informal request for benefits and even though the employer never denied such a request." *Id.* at 1139 (citing 29 U.S.C. § 1140). The circumstances we outlined as our hypothetical were as follows: the employer knows the employee has a medical condition which will eventually require significant treatment. Before the employee has an opportunity to request benefits for the treatment of this condition, the employer terminates the employee for the purpose of avoiding payment of the future medical expenses under an ERISA employee benefit plan. *See id.* In these hypothetical circumstances, we found that an employee could maintain an action notwithstanding the fact the employee never requested the benefit coverage.

Fairchild alleges that his situation parallels our hypothetical example and therefore he need not show that he had applied for the benefits he now seeks. This may be true if Fairchild's complaint alleges a § 510 claim. Fairchild's complaint states only that Forma and Life Sciences refused to provided him the benefits to which he was entitled. Assuming his complaint states only a cause of action for the wrongful denial of benefits, summary judgment was properly granted because Fairchild did not request the benefits prior to filing suit.

■ Even if we read Fairchild complaint to assert a § 510 claim, summary judgment was still properly granted. To avoid summary judgment, Fairchild must have some facts to suggest he has a colorable claim. Section 510 requires that the employee show that the reason he was terminated was to interfere with his rights under ERISA. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290 (7th Cir.1998). That is, he must show that Forma terminated him to avoid paying benefits to which he would have been entitled had he continued working. Fairchild may meet this burden either by presenting direct evidence supporting this conclusion, or he can utilize the burden-shifting *McDonnell Douglas* framework. *See id.*, 141 F.3d 290; *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996).

Fairchild does not assert that he has direct evidence that Forma terminated him to interfere with his rights under ERISA. Neither does Fairchild explicitly rely on the *McDonnell Douglas* framework. Instead, Fairchild argues that he need not have requested the benefits to which he was entitled to maintain an ERISA claim. This argument does not assist our resolution of the § 510 claim. Although Fairchild focuses on whether the law required him to apply for the benefits prior to making an ERISA claim, we are not

bound by his arguments and we may grant summary judgment for any reason supported by the record. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997); *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 490 (7th Cir.1996), *cert. denied*, ⸺ U.S. ⸺, 118 S.Ct. 54, 139 L.Ed.2d 19 (1997).

Under either the direct or burden-shifting standard, Fairchild cannot make the requisite showing to defeat summary judgment. As evidence for his ERISA claim, Fairchild presents Rosenblum's response to Fad when Fad inquired about Fairchild going on disability. While certainly a case of unfortunate timing and reprehensible language, we do not believe that Rosenblum's response of "Fuck him" is sufficient to establish that Forma terminated Fairchild to avoid paying disability. First, it is far from clear what Rosenblum meant by the comment. He could have simply been expressing anger at Fairchild for consistently being a poor performer. Even if we were to believe that Rosenblum meant "forget-Fairchild-going-on-disability-because-we'll-fire-him-before-that-ever-happens," which we consider a stretch at best, Fairchild must still contend with the fact that it was Bergen, not Rosenblum or Fad, who fired him. Fairchild presented no evidence that Bergen was aware of Rosenblum's comment. The difficulty in ascertaining Rosenblum's meaning coupled with the fact that the decision maker was not present when the comment was made and the lack of evidence to suggest that he was aware of the comment leads us to conclude that Fairchild cannot establish by this evidence that he was terminated in an attempt to interfere with his rights under ERISA.

Even if we utilize the burden-shifting analysis, Fairchild's argument fails. Because Forma has proffered a legitimate non-discriminatory reason for Fairchild's termination, the onus is upon Fairchild to establish that this reason is pretextual. For the same reasons stated above, Rosenblum's argument does not give us reason to believe that Forma's reason for firing Fairchild was pretextual.

Fairchild also asserts that once Rosenblum learned of his disability, Rosenblum began pressuring Fad to fire him. Again, Fairchild's argument is unpersuasive. Fairchild cites to Rosenblum's comment to Fad asking Fad if he had "moved on" Fairchild as evidence of this pressure. Fairchild does not connect this comment with his disability other than to assert that Rosenblum made the comment after Fad told him about Fairchild's disability. However, Rosenblum had other, nondiscriminatory reasons to wonder why Fad had not "moved on" Fairchild. Fairchild was a poor performer, and Rosenblum, as President of Forma, had reason to be concerned about him. Additionally, as above, the fact that Rosenblum asked Fad to "move on" Fairchild does not speak to Bergen's motivation in firing Fairchild. Again Fairchild does not suggest that Bergen was in attendance when Rosenblum said this to Fad, nor does Fairchild assert that Bergen had any knowledge of this conversation. Under either the direct or burden-shifting method of proof, Fairchild's argument is unpersuasive.

Because Fairchild cannot establish that the desire to reduce or interfere with his ERISA rights was the motivating factor in his termination, or that the reason Forma gave for his termination was pretextual, his ERISA claim must fail.

The district court's decision granting summary judgment to the defendants is hereby AFFIRMED.