**Robert RODRIGUEZ, Plaintiff–Appellant,**

v.

**AIRBORNE EXPRESS, Defendant–Appellee.**

**No. 99–17350.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2001

Filed Sept. 12, 2001

Jeremy L. Friedman, Oakland, California, for the plaintiff-appellant.

Theodora R. Lee, Therese M. Leone, Littler Mendelson, Oakland, California, for the defendant-appellee.

Before: PREGERSON, CANBY, and THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff Robert Rodriguez brought this action against Defendant Airborne Express ("Airborne") for discrimination based on disability in violation of California's Fair Employment and Housing Act ("FEHA"). After removing the case to federal court on the ground of diversity of citizenship, Airborne moved for summary judgment. The district court granted the motion, dismissing Rodriguez's action for failure to exhaust administrative remedies under FEHA. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the summary judgment and remand for further proceedings to determine whether equitable considerations excuse Rodriguez's failure to exhaust his administrative remedies.

## BACKGROUND

Rodriguez was employed as a delivery truck driver by Airborne for seven years, until he was terminated in 1995, allegedly for absenteeism. Rodriguez contends that his attendance problems were caused by his severe mental depression that resulted from the death of his infant son and other family difficulties. He contends that, although his supervisors at Airborne were

well aware that his absences were caused by his depression and the side-effects of his anti-depressant medications, they failed to engage in any discussions of accommodation prior to his termination.

After three absences in September 1995, Airborne informed Rodriguez that he would be discharged for excessive absenteeism. Rodriguez appealed the discharge through his union, asking at his grievance hearing that consideration be given to his mental depression and family situation. He lost this appeal, and was terminated on December 11, 1995.

Nearly one year later, on December 5, 1996, Rodriguez went to the California Department of Fair Employment and Housing ("DFEH") to file a charge of discrimination against Airborne under FEHA.[1] The parties dispute whether, as a result of this visit, Rodriguez succeeded in charging discrimination on the ground of disability and, if he did not succeed, whether the actions of the DFEH caseworker who interviewed him excused his failure.

At the DFEH, Rodriguez completed a pre-complaint questionnaire, in which he listed Airborne as the party he wished to complain against, but left blank all questions pertaining to the discrimination he allegedly suffered. He was interviewed that same day by DFEH consultant Victor Aguirre. According to Rodriguez's declaration in the district court, he told Aguirre about his mental depression during the intake interview, explaining that it was the cause of his absences. He told Aguirre that his depression was due to the death of his child and separation from his wife, that he was taking anti-depressant medications, and that his absences were excused by his physicians. He told Aguirre that he was discharged because of three particular absences, and gave the reasons for those absences. He then asked Aguirre to pursue a charge of disability discrimination against Airborne. According to Rodriguez, Aguirre told him repeatedly during the interview that, "under the law," he must claim that he was discriminated against because of race, age, national origin or religion, and then steered the interview toward a possible claim of race discrimination. In response to Aguirre's questions, Rodriguez agreed that he may have been terminated because he is Hispanic. Finally, when asked whether there was any other possible reason for his termination, Rodriguez suggested he may have been discharged for his pro-union stance or to avoid future worker's compensation payments.

■ The record contains Aguirre's handwritten notes from the intake interview, which were judicially noticed by the district court along with the rest of Rodriguez's DFEH file.[2] The parties dispute whether these notes corroborate or undermine Rodriguez's account of the intake interview. Aguirre's two and one-half pages of notes, dated December 5, 1996, under the heading "Intake Notes," read substantially as follows. Page one begins with Rodriguez's name, date of birth, job

---

1. FEHA is California's civil rights statute that proscribes employment discrimination on account of age, Cal. Gov't Code § 12941, or "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation," § 12940.

2. Rodriguez objected to the district court taking judicial notice of the entire DFEH file prior to summary judgment. If he intended to raise this issue on appeal, he failed properly to do so, merely noting in a footnote that he had objected before the district court. See Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir.1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

title, hire date, and salary. It continues with a notation that Rodriguez had three accidents and three absences within a six-month period. The notes next indicate that Rodriguez went to grievance through his union. The following two lines read, specifically: "1993—lost a child" and "1995—lost wife (separated)." The next line reads either "DOI—1994" or "DUI—1994." Page one ends with a notation that Rodriguez was terminated by a grievance panel on December 11, 1995 for absenteeism. Page two begins with a list of possibly Hispanic Airborne employees who had been discharged by the company. Next, there is a racial breakdown of the forty-eight delivery drivers at the Airborne office where Rodriguez worked. Page two ends with notations of Rodriguez's thoughts on possible reasons for his termination; these reasons include his pro-union activities and his boss's dislike of him. Page three begins with a reference to a "back condition" that Airborne knew of when Rodriguez was hired. This notation is followed by a heading for "White guys written up for absenteeism," but no names are listed underneath this heading. The notes conclude with the name of Rodriguez's supervisor.

Following the intake interview, Aguirre drafted Rodriguez's formal administrative complaint,[3] which charged Airborne with discrimination because of race. Rodriguez signed the complaint on December 6, 1996. In addition to a checkmark in the box labeled "race," the complaint contained the following factual allegations:

I. On or about December 11, 1995, I was terminated from my position as an Express Driver. I was hired as an Express Driver in September 1989. At the time of my termi-nation, I was making roughly $57,000.00 per year.

II. I was told that I was terminated because of my absenteeism and involvement in accidents.

III. I believe that I was terminated because of my race (Mexican–American). My belief is based on the following:

A. Non–Mexican–Americans who have more absences and accidents than I have were not terminated.

B. I believe that the reasons given for my termination were simply pretextual, the truth being that, I was terminated because of my race (Mexican–American).

Aguirre then investigated Rodriguez's charge of race discrimination against Airborne, but found no probable cause to prove a violation. Accordingly, DFEH closed Rodriguez's case and issued him a right-to-sue letter on November 24, 1997. Rodriguez did not receive his right-to-sue letter until May 1998, because it was initially sent to the wrong address. According to Rodriguez, he began searching for an attorney soon thereafter, and ultimately secured an attorney in late October or early November 1998. On November 13, 1998, ten days before filing this action, Rodriguez's attorney sent a letter to DFEH District Administrator, Herbert Yarbrough, seeking to amend Rodriguez's original administrative complaint to include a charge of mental disability discrimination. In this letter, Rodriguez's attorney stated that Rodriguez had disclosed his medical condition to Aguirre, who failed to include disability as a basis for discrimination when he drafted Rodriguez's formal administrative complaint.

---

**3.** We use the terms "administrative charge" and "administrative complaint," as well as "charge" and "complaint," interchangeably throughout this opinion. We distinguish these terms from the civil complaint filed in court where appropriate.

Thus, Rodriguez wished to amend his complaint to "make clear" that his charge included disability discrimination and to ensure a complete administrative record prior to filing his civil complaint in superior court. On November 20, 1998, nearly three years after Rodriguez was terminated by Airborne, DFEH amended Rodriguez's original complaint, as requested, to include a charge of mental disability discrimination. DFEH then sent a copy of the amended complaint to Airborne, along with a "Notice of Filing of *Amended* Closed Discrimination Complaint," which stated that the investigation would not be reopened.

Rodriguez filed this action against Airborne in California Superior Court on November 23, 1998, alleging only disability discrimination under FEHA. After removing the case to federal court on diversity grounds, Airborne moved for partial summary judgment on the ground of failure timely to exhaust administrative remedies. The district court granted Airborne's motion, concluding that Rodriguez had not exhausted his administrative remedies under FEHA, because his charge of mental disability discrimination was not filed with DFEH within FEHA's one-year deadline, and that equitable doctrines did not apply to save his claim. Accordingly, the district court dismissed Rodriguez's action. From this ruling, Rodriguez appeals.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

 We review de novo the district court's ruling that Rodriguez's mental disability discrimination claim is barred for failure timely to exhaust his administrative remedies as required by FEHA. *Cf. Vinieratos v. United States Dept. of Air Force Through Aldridge,* 939 F.2d 762, 768 & n. 5 (9th Cir.1991) (reviewing de novo whether plaintiff exhausted his administrative remedies, a statutory precondition to suit under Title VII).[4]

 "In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 1121, 257 Cal.Rptr. 665 (1989); *accord Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 492, 59 Cal. Rptr.2d 20, 926 P.2d 1114 (1996). Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue.[5] *Romano,* 14 Cal.4th at

---

4. Title VII of the Federal Civil Rights Act of 1964 is the federal counterpart to FEHA. 42 U.S.C. § 2000e *et. seq.* We may look to federal authority regarding Title VII and similar civil rights statutes when interpreting analogous statutory provisions of FEHA. *Mora v. Chem–Tronics, Inc.,* 16 F.Supp.2d 1192, 1201 (S.D.Cal.1998); *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 1121, 257 Cal.Rptr. 665 (1989); *Baker v. Children's Hosp. Med. Ctr.,* 209 Cal.App.3d 1057, 1063, 257 Cal.Rptr. 768 (1989).

5. DFEH is charged with receiving, investigating and conciliating charges of unlawful employment discrimination under FEHA. Cal. Gov't Code §§ 12901, 12930. A person aggrieved by unlawful employment discrimina-

tion must file a written charge with DFEH within one year of the alleged unlawful practice. *Id.* § 12960. The charge consists of a verified complaint, in writing, that states the particulars of the alleged discriminatory practice, and the names and addresses of those alleged to have committed it. *Id.* If DFEH finds upon investigation that the charge is valid, it then attempts conciliation. *Id.* § 12963.7. If conciliation fails, DFEH may file an accusation to be heard by the Fair Employment and Housing Commission, which may grant relief upon finding a violation. *Id.* §§ 12903, 12965–70. If DFEH does not issue an accusation within 150 days of receiving a charge, or if it earlier determines that no accusation will issue, it must give the

492, 59 Cal.Rptr.2d 20, 926 P.2d 1114; *Okoli v. Lockheed Technical Operations Co.,* 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57 (1995); *Martin v. Lockheed Missiles & Space Co.,* 29 Cal.App.4th 1718, 1724, 35 Cal.Rptr.2d 181 (1994). The scope of the written administrative charge defines the permissible scope of the subsequent civil action. *Yurick,* 209 Cal.App.3d at 1121–23, 257 Cal.Rptr. 665. Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust. These procedural requirements, as with all provisions of FEHA, are to "be construed liberally for the accomplishment of the purposes [of FEHA]." Cal. Gov't Code § 12993(a). Those purposes include the elimination of employment discrimination. § 12920.

**1. *Rodriguez failed timely to exhaust his administrative remedy.***

▮ We reject Rodriguez's contention that his original charge filed with the DFEH, that he was discriminated against because he was Mexican–American, should be construed to include a claim of disability discrimination. In order for his charge of discrimination against Mexican–Americans to be construed to include a claim of discrimination on the ground of disability, the disability ground would have to be "like or reasonably related to" the claim of race discrimination. *Sandhu v. Lockheed Missiles & Space Co.,* 26 Cal.App.4th 846, 31 Cal.Rptr.2d 617 (1994) (adopting standard of federal Fifth and Ninth Circuits). This standard is met where the allegations in the civil suit are within the scope of the administrative investigation "which can reasonably be expected to grow out of the charge of discrimination." *Id.* Even conceding that charges must be construed with great liberality, especially when the complainant is acting pro se, *see Casa-*

complainant notice and a right-to-sue letter.

*vantes v. California State Univ., Sacramento,* 732 F.2d 1441, 1442 (9th Cir.1984), we conclude that Rodriguez's charge of discrimination against Mexican–Americans would not reasonably trigger an investigation into discrimination on the ground of disability. The two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other. It would not be proper to expand the claim as Rodriguez asks, when "the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination." *Okoli,* 36 Cal.App.4th at 1615, 43 Cal. Rptr.2d 57; *see also Stallcop v. Kaiser Found. Hosps.,* 820 F.2d 1044, 1050 (9th Cir.1987) (holding that allegations of sex and age discrimination in civil complaint were not encompassed by charge filed with DFEH alleging only national origin discrimination). Moreover, Rodriguez's charge of ethnic discrimination was very specific, rendering it especially inappropriate to expand the civil action to include other claims. *See Okoli,* 36 Cal.App.4th at 1616, 43 Cal.Rptr.2d 57.

▮ Although Rodriguez's oral statements to the DFEH intake officer may provide an equitable excuse for failure to exhaust, as we discuss below, they do not cure the legal defects in his charge. This circuit has previously refused to consider oral statements conveyed to a DFEH investigator to determine the scope of a reasonable investigation. *Stallcop,* 820 F.2d at 1050. Moreover, a California court has held that neither unverified written nor oral information relayed to DFEH may substitute for a formal administrative charge. *Cole v. Antelope Valley Union High Sch. Dist.,* 47 Cal.App.4th 1505, 1515, 55 Cal.Rptr.2d 443 (1996).

*Id.* § 12965.

We conclude, accordingly, that Rodriguez failed to exhaust his administrative remedies with respect to his claim for disability discrimination, because that claim falls outside the scope of his timely administrative complaint alleging discrimination on the ground that he was Mexican–American.

### 2. The untimely amendment of Rodriguez's administrative complaint did not relate back to the original complaint.

■ We also reject Rodriguez's contention that the untimely amendment to his administrative complaint, which was accepted by the DFEH, related back to his original complaint and rendered the disability discrimination claim timely.[6]

■ We agree with Rodriguez that the relation-back doctrine is available in appropriate circumstances to render timely an otherwise untimely amendment to a charge under FEHA. Although it is true, as Airborne contends, that DFEH is limited to the statutory authority granted to it by the Legislature, see Peralta Cmty. College Dist. v. FEHC, 52 Cal.3d 40, 60, 276 Cal.Rptr. 114, 801 P.2d 357 (1990), some incidental powers are necessarily implicit in a grant of operating authority. The Fair Employment and Housing Commission held in a precedential decision that an untimely amendment adding a sex discrimination charge related back to a timely-filed race discrimination charge, because all of the allegations were "based on the same operative facts." FEHC v. County of Alameda, Sheriff's Dep't, FEHC Dec. No. 81–13, 1981 WL 30856, at *8 (Cal. F.E.H.C. July 2, 1981). We accord great respect to the Commission's interpretation of its authority and will follow it unless it is clearly erroneous. Judson Steel Corp. v. Workers' Comp. Appeals Bd., 22 Cal.3d 658, 668, 150 Cal.Rptr. 250, 586 P.2d 564 (1978); see also Jones v. Tracy Sch. Dist., 27 Cal.3d 99, 107, 165 Cal.Rptr. 100, 611 P.2d 441 (1980) (California courts "ordinarily defer to the administrative interpretation of a statute adopted by the agency charged with its enforcement"). The Commission's conclusion that the relation-back doctrine is applicable to administrative charges accords with FEHA's purpose of eliminating discrimination in employment, see Cal. Gov't Code § 12920, and we accept it. Cf. Peterson v. City of Wichita, 888 F.2d 1307, 1308–09 (10th Cir.1989) (upholding regulation permitting EEOC to allow relation-back of amendments, and listing other courts in accord).

■ We do not, however, accept Rodriguez's view that the mere acceptance of an amendment by DFEH is conclusive that the amendment relates back.[7] In the several federal cases addressing relation back of amended EEOC charges, the agency's acceptance of an amended charge did not end the exhaustion analysis. In each of these cases, the court conducted its own de novo analysis of whether the amendment related back, and gave no apparent weight to the fact that the EEOC had accepted

6. We review de novo the district court's decision that the amendment did not relate back to the original administrative complaint. See Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 574–76 (7th Cir.1998) (de novo review of question whether untimely amended EEOC charge relates back).

7. Rodriguez submitted an affidavit of a DFEH official, Herbert Yarbrough, stating that DFEH considered and accepted Rodriguez's amendment because DFEH believed his disability claim "was based on the same facts he raised in his initial administrative complaint." Although this affidavit was submitted late, we find no abuse of discretion by the district court in considering it, if indeed the district court did so.

and filed the amendment. *See, e.g., Fairchild,* 147 F.3d at 574–76; *Simms v. Oklahoma Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1325, 1326–27 (10th Cir.1999); *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 458, 461–65 (5th Cir. 1970). We adopt the same approach here.

▬ We come, then, to the question whether Rodriguez's amendment claiming disability discrimination may properly be related back to his original complaint alleging discrimination on the ground that Rodriguez was Mexican–American. We have been referred to no controlling precedent from the California courts. Federal circuit courts have employed various approaches in dealing with relation back of EEOC complaint amendments. Some have ruled that amendments introducing a new theory of recovery generally do not relate back. *See e.g., Simms,* 165 F.3d at 1326–27; *Evans,* 80 F.3d at 963; *Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 675 (9th Cir.1988). Other circuits, including the Fifth Circuit in a seminal case, permit relation back of new theories on the principle that the proper scope of the charge is determined by facts alleged in the original complaint, not the legal theory originally attached to those facts. *See Sanchez,* 431 F.2d at 463–64; *Washington v. Kroger Co.,* 671 F.2d 1072, 1075–76 (8th Cir.1982). Although the divergence between these views may not be as great as it seems when the facts of each case are analyzed, the approach of *Sanchez* is the more permissive.

The Fair Employment and Housing Commission, in *County of Alameda, Sheriff's Dep't,* 1981 WL 30856 at *8, appeared to adopt the *Sanchez* approach. We are not convinced, however, that the California courts would apply the *Sanchez* rule without limit. Even if the factual allegations of the original complaint, rather than the legal theory, establish the proper boundaries of the charge, the factual allegations must be able to bear the weight of the new theory added by amendment. This point is best illustrated by cases from the Seventh Circuit. Although the Seventh Circuit allowed an untimely sex discrimination charge to relate back to an original charge of race discrimination in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 168–69 (7th Cir.1976), it refused to allow a disability discrimination charge to relate back to an age discrimination charge in *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 574–76 (7th Cir. 1998), because the original complaint contained no facts that would support a charge of disability discrimination "absent its direct allegation," *id.* at 575. The *Fairchild* court stated expressly that the case did not fall within the scope of *Sanchez* because the plaintiff had "made factual allegations that could only support one kind of discrimination-discrimination based on age." *Id.* We conclude that this approach would be applied to Rodriguez's case by the California courts, and that Rodriguez's amendment would not be permitted to relate back.

Rodriguez's timely administrative complaint fails to offer an adequate factual basis to support a charge of disability discrimination, and thus fails to warrant relation back of the untimely amended charge. Rodriguez argues that a basis for alleging disability discrimination can be found in the language, "I was told that I was terminated because of my *absenteeism.*" (Emphasis added.) If this statement, combined with the checkmark in the box for "race," constituted the extent of the original charge, Rodriguez's argument might have some merit. The original charge, however, explicitly states that Rodriguez believed his termination was due to race

and that Airborne's reason for terminating him was pretextual. It elaborates that "Non–Mexican–Americans who have more absences and accidents than I have were not terminated." The exclusivity of this language overshadows any notice of disability discrimination contained in the term "absenteeism." This allegation of termination because of Mexican–American status is an entirely different charge from one that the employer had failed to acknowledge and accommodate a disability. This divergence is illustrated by the fact that the amended charge added several new factual allegations to support the new legal theory of disability discrimination-including allegations that Rodriguez had a mental disability, that Airborne knew he suffered from clinical depression at the time of his termination, and that Airborne failed to offer him accommodation. We therefore conclude that the specific factual allegations in Rodriguez's original charge cannot reasonably support a claim of discrimination on the basis of disability. His amendment does not relate back, and his administrative complaint of disability discrimination was therefore untimely.[8]

## II. Equitable Exception to Exhaustion

■ Although California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction. *Keiffer v. Bechtel Corp.*, 65 Cal.App.4th 893, 896–99, 76 Cal.Rptr.2d 827 (1998). The administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations and are subject to equitable doctrines such as waiver, estoppel,

and tolling. *Grywczynski v. Shasta Beverages, Inc.*, 606 F.Supp. 61, 65–66 (N.D.Cal. 1984); *Keiffer*, 65 Cal.App.4th at 899–901, 76 Cal.Rptr.2d 827; *Denney v. Universal City Studios, Inc.*, 10 Cal.App.4th 1226, 1233–34, 13 Cal.Rptr.2d 170 (1992) (abrogated on other grounds).

Rodriguez contends that he failed to file a timely mental disability discrimination charge only because he was misled by the DFEH into believing that he could not pursue such a charge under FEHA, and that this fact should excuse his failure. His argument is directly supported by *Denney v. Universal City Studios, Inc.*, 10 Cal.App.4th at 1232–34, 13 Cal.Rptr.2d 170. In *Denney*, the California court of appeal adopted the rule that equity may excuse noncompliance with exhaustion requirements under the FEHA, when the plaintiff's failure to comply can be attributed to the administrative agency (generally the DFEH) charged with processing his complaint. *Id.* The plaintiff in *Denney* brought a civil suit under FEHA for age and disability discrimination and retaliation. The defendant contended that Denney failed to exhaust his administrative remedies, because his timely administrative complaint, filed with the DFEH through the EEOC, contained only a charge of age discrimination.[9] Denney countered that he had notified the EEOC of all three of his charges-age discrimination, disability discrimination, and retaliation-when he completed an intake questionnaire, but that the EEOC had prepared a formal complaint raising only the age charge. *Id.* at 1234, 13 Cal. Rptr.2d 170. When Denney complained,

---

8. Because we conclude that Rodriguez's amended charge does not relate back to his original charge, we need not address Airborne's contention that DFEH lacked authority to accept the amended charge after it had already "closed" the case.

9. The DFEH and the EEOC have a work-sharing agreement whereby a complaint filed with the EEOC will automatically be filed with the DFEH if appropriate. *See Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987).

the EEOC told him that the age charge was sufficient to commence the administrative process (including referral to DFEH). *Id.* Denney relied on this representation of the EEOC until he obtained an attorney. *Id.* His attorney advised him, several days after FEHA's one-year filing deadline expired, to amend his charges with the EEOC and the DFEH to add the retaliation and disability discrimination claims, which he promptly did. *Id.* On these facts, the court held that equity precluded barring Denney's retaliation and disability claims for failure to exhaust. *Id.* The court deemed Denney to have complied with FEHA's one-year filing deadline with respect to all three of his claims. *Id.*

 In so holding, *Denney* relied upon this court's decision in *Albano v. Schering–Plough Corp.*, 912 F.2d 384 (9th Cir.1990), where we excused a plaintiff from failing to charge constructive discharge along with his charge of failure to promote on the ground of age, because the EEOC had refused to make the amendment and had told the plaintiff incorrectly that constructive discharge would be encompassed by his original charge. *See Albano*, 912 F.2d at 387–88. Although the employer was not properly put on notice of Albano's constructive discharge claim, we observed that the primary function of an EEOC charge is to set in motion an EEOC investigation and conciliation, rather than to give notice to the employer of the claims against it.[10] *Id.* at 388.

 If the facts prove to be as set forth in Rodriquez's affidavit, his case is governed by *Denney* and, by analogy, *Albano*.[11] As with virtually any equitable doctrine, application of the *Denney* exception requires balancing the equities in the particular case. *See Naton v. Bank of California*, 649 F.2d 691, 696 & n. 5 (9th Cir.1981); *Addison v. California*, 21 Cal.3d 313, 321, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). Although there is no formula for doing so, prior cases have set forth some factors meriting consideration.

**10.** Similarly, the purpose of filing a charge with California's DFEH prior to filing a civil lawsuit under FEHA is to "enable that agency to investigate the charges and attempt to obtain voluntary compliance with the law." *Soldinger v. Northwest Airlines, Inc.*, 51 Cal. App.4th 345, 381, 58 Cal.Rptr.2d 747 (1996).

**11.** Rodriguez's position is also supported by the line of cases permitting equitable tolling of the limitation period for filing charges with an administrative agency. *See, e.g., Browning v. AT&T Paradyne*, 120 F.3d 222, 226 (11th Cir.1997) (tolling the 90–day limitations period for filing an age discrimination suit, because plaintiff's attorney was told in error by EEOC investigator that plaintiff's case was governed by longer statute of limitations in effect prior to the Civil Rights Act of 1991); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir.1992) ("Misleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations.").

We note, however, that the equitable exception to the exhaustion requirement adopted in *Denney* and *Albano* is conceptually distinct from the doctrine of equitable tolling. The plaintiff in *Albano* had never formally filed a charge of constructive discharge, not even an untimely one, so equitable tolling was simply inapplicable. Thus, to grant relief, the *Albano* court had to excuse the plaintiff entirely from filing an administrative charge, creating an exception much broader than equitable tolling of a limitations bar. Although the exception in *Denney* purports to be as broad as that in *Albano*, it was applied in a situation like that of Rodriguez, where a late amendment had actually been filed, requiring equitable relief seemingly no broader than equitable tolling. But because the California courts have not applied the doctrine of equitable tolling in the *Denney* circumstances, but generally only when a delay was caused by the plaintiff's pursuit of alternative remedies, *see, e.g., Addison v. California*, 21 Cal.3d 313, 317–18, 146 Cal.Rptr. 224, 578 P.2d 941 (1978), we characterize the *Denney* exception as one of equitable excuse rather than equitable tolling.

The equities favor a discrimination plaintiff who (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.[12] *See Denney,* 10 Cal.App.4th at 1234, 13 Cal.Rptr.2d 170; *Albano,* 912 F.2d at 388; *cf. Frederickson v. UPS,* 1999 U.S. Dist. LEXIS 2650, at *7–9 (N.D.Cal. Mar. 8, 1999) (rejecting equitable excuse on the facts and because plaintiff was represented by counsel at time of making original charge). Rodriguez's declaration asserts facts that qualify him under these factors, which *Denney* held to outweigh any concern that the employer was prejudiced by the plaintiff's failure to exhaust. *See Denney,* 10 Cal. App.4th at 1234, 13 Cal.Rptr.2d 170; *see also Albano,* 912 F.2d at 387–88.

■ We find no merit in Airborne's argument that Rodriguez's "self-serving affidavit" is insufficient to create a triable issue of fact with respect to whether he was misled by the DFEH. Rodriguez sets forth the facts of his DFEH interview with great specificity. This circuit has held that self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory. *See United States v. Shumway,* 199 F.3d 1093, 1103–04 (9th Cir.1999) (noting that any affidavit of a party that is worth submitting is "self-serving"). It is true that some of the material in the notes of the interviewing DFEH officer, Aguirre, may support inferences contrary to Rodriguez's declaration. But that point only

establishes that a triable issue of fact exists, and that Rodriguez is not entitled to summary judgment on the basis of his affidavit.

Because Rodriguez has presented evidence which, if credited by the trier of fact, would permit equitably excusing his noncompliance with FEHA's administrative exhaustion requirements, summary judgment is not appropriate. The trier of fact must resolve disputed factual issues in order to determine whether Rodriguez is entitled to equitable excuse for his failure to exhaust his disability discrimination claim. *See Richardson v. Frank,* 975 F.2d 1433, 1435–36 (10th Cir.1991) (holding that whether Title VII plaintiff was misled by EEO office as to the time limits for filing his EEO complaint was a fact question not appropriate for summary judgment); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1199 (9th Cir.1988) (remanding for resolution of disputed factual matters prior to ruling on application of California's equitable tolling doctrine).

## CONCLUSION

Because Rodriguez failed to file a timely administrative charge with DFEH alleging disability discrimination, he failed to exhaust his administrative remedies. His untimely amendment of the charge does not relate back to the original charge. Equitable considerations may prevent Rodriguez's claim from being time-barred, however, if he was in fact misled by DFEH into believing he could not pursue a claim of disability discrimination under FEHA. A triable issue of fact exists with regard to this issue. The district court's summary judgment in favor of Airborne is therefore reversed, and the case is re-

---

12. Diligence is required for the successful invocation of virtually any equitable doctrine. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

manded to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**