Filed 7/11/14  Sanguinetti v. Forest Laboratories CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| GINA SANGUINETTI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>FOREST LABORATORIES, INC., et al.,<br><br>        Defendants and Respondents. | A138400<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-12-518241) |

Gina Sanguinetti sued her former employer, Forest Laboratories, Inc., Forest Pharmaceuticals, Inc. and two of its employees, Brent Newcomb and Willi Toups, (collectively Forest) for gender, age, and disability discrimination under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).  We hold the trial court properly granted summary judgment to Forest because Sanguinetti failed to raise triable issues of material fact with respect to any of her claims.

## I.  BACKGROUND

Sanguinetti was hired as a territory sales representative for Forest in 1998.  Her duties included calling upon hospitals and pharmacies within her territory to promote Forest's products.  Generating sales was the most important goal in Sanguinetti's position with Forest.  Toups became her division manager and direct supervisor in 2004 and was responsible for periodically riding with Sanguinetti and preparing evaluations of her performance in the field.  These evaluations were quantified on a scale of 1 to 5, with 3.0 considered to be the minimum standard performance.  Sales representatives also received

midyear and annual reviews. From 1998 to mid-2008, Sanguinetti consistently received performance evaluations above 3.0.

Sanguinetti had her first child in 2003, and took maternity leave in 2005 to have twins. In fiscal year 2006 (covering April 1, 2005 to March 30, 2006), she ranked 82d in sales among Forest's 104 hospital sales representatives, and in fiscal year 2007, she ranked 24th. Sanguinetti's May 2008 performance review (fiscal year 2008 annual review) gave her a 3.43 rating. However, for the nine months ending in December 2007 of that fiscal year, she ranked No. 102 in sales, and the evaluation stated she needed to take immediate action to meet challenges in her territory.

Sanguinetti received negative feedback from Toups in July 2008 when she was pregnant with her second set of twins, and about to go on maternity leave. Sanguinetti's final sales results for the 2008 fiscal year ranked her 103 out of Forest's 104 hospital representatives nationally. Sanguinetti's field trip evaluation in July 2008 was 3.07, the lowest rating Toups had given her to that point. The evaluation expressed ongoing concerns about her "inability to deliver positive business results for [Forest's] products within [her] territory." Sanguinetti took maternity leave in July 2008, and returned on January 6, 2009. On January 7, 2009, Toups gave Sanguinetti her first ever below satisfactory midyear review of 2.82.[1] The evaluation expressed serious concerns about her sales results based on her near-bottom sales ranking for fiscal year 2008.

On February 18, 2009, Toups gave Sanguinetti a field trip evaluation score of 2.72. The evaluation emphasized Sanguinetti's national sales ranking continued to be near the bottom, and prescriptions written in her territory for a leading Forest product continued to lag. On February 20, 2009, Toups issued Sanguinetti a written warning, copied to Bonnie McDonald, Forest's human resources director for field sales, based on Sanguinetti's continued poor sales results. The warning stated "a failure on your part to improve to an 'above standard' rating" would result in "further disciplinary action . . . up

---

[1] This covered the period from April 1, 2008 to October 1, 2008, and would have been given to her before January 2009, had she not been on maternity leave.

to probation and including termination." On March 17, 2009, Sanguinetti filed a written complaint with McDonald, asserting Toups was discriminating against her for taking a maternity leave in 2008, and requesting a formal investigation. Sanguinetti's complaint described conversations with Toups in which he alluded to the challenges of balancing work and family while raising multiple children. She described another discussion that occurred two weeks after she returned to work in which Toups pressed her about the need to generate more sales every day. When Sanguinetti defended the progress she had made in her brief time back in the field, Toups responded in an agitated manner: " 'Your family is affecting my money.' "[2] On another occasion shortly after her return he told her she would have to " 'suffer the consequences' " for the time she had taken off.

Sanguinetti's April 2009 performance review for fiscal year 2009 reflected an overall score of 2.86. Her sales ranking continued to be close to the bottom nationally. The review faulted her for failing to persuade more physicians to write more prescriptions for Forest's products, and not meeting the expectations outlined in the February 2009 warning letter. In April 2009, Sanguinetti asked Toups for a private room for a business trip to take place in late April, to ensure privacy when she pumped breast milk. The request was denied.

In June 2009, Forest arranged for a regional sales trainer, Cormac McCaul, to ride with Sanguinetti and provide her with coaching and feedback. McCaul drafted a review of his field ride indicating several specific performance deficiencies. The tone of his report was highly critical.[3] During his visit, McCaul made several comments to Sanguinetti she regarded as discriminatory. The first comment he made to her when they sat down to have lunch was, "I heard you had a baby nine months ago." He also

---

[2] Toups denied making this statement.

[3] For example the review stated: "In light of your 11 years on the job, it is my opinion that you are underperforming and I saw a lack of initiative to change." He wrote that she had made "numerous miss-steps" during time he accompanied her, "much of it tied back into your own initiative to learn your product and plan for your calls." Sanguinetti dismissed most of McCaul's purported observations during the field ride as fabrications.

commented he and his wife could barely handle working and having two children, and said, " 'I don't know how you do it. How do you do it?' " He asked her questions about her personal life, such as who took care of her children and picked them up from their activities, that made her uncomfortable.

Sanguinetti filed a second complaint of discrimination with McDonald in July 2009. In it, Sanguinetti explained why she believed Toups's negative performance evaluations of her were bogus and unfair for numerous reasons, and how her sales rankings had been especially hard hit due to a decision by the Santa Clara Valley Medical Center in 2007 to pull one particular drug from its formulary in response to budget cuts. McDonald responded to the complaint in September 2009, explaining she had been unable substantiate Sanguinetti's complaints of a hostile work environment or discrimination by Toups based on the number of children she had.

On October 2, 2009, Sanguinetti received a field trip evaluation of 2.45 from Toups. Toups noted she had been in the bottom 50 percent of sales rankings for 10 consecutive quarters (i.e. since the first quarter of 2007). He noted she was expected to make an average of eight sales calls per day but according to her own records was making only three to four calls per day. Toups wrote: "You have continually expressed numerous reasons for your poor sales results . . . . What you have not sufficiently demonstrated is the willingness or the ability to find solutions and overcome the challenges that you perceive exist in your territory."

Toups arranged a lunch meeting at a restaurant for November 3, 2009 to go over Sanguinetti's evaluation and performance with her. Toups's supervisor, Brent Newcomb, was also present when she arrived, which surprised Sanguinetti since Toups had not mentioned Newcomb being there. She did know Newcomb was scheduled to do a field ride with her the following day. She immediately felt uncomfortable about Newcomb being there. Toups and Newcomb began the meeting by laughing and joking about a football bet they had made some years earlier. This made her more uncomfortable. She felt they were insensitive that this display of male camaraderie would make her feel

4

isolated or ostracized as a woman. Newcomb then proceeded to suggest sarcastically that Sanguinetti should look into coloring her gray hair.[4]

The meeting lasted approximately six hours. At two different points, Sanguinetti asked to use the restroom and was told to wait until they were finished with the topic under discussion. The same occurred when she requested to order lunch. In light of further comments Newcomb made to her the following day, Sanguinetti felt he was using intimidation tactics at the restaurant to put her under stress and create a hostile work environment in hopes she would quit.

Sanguinetti met Newcomb for breakfast the next morning before their field ride. Newcomb told her that although he believed she was a competent person, he questioned her commitment to the job. He said he did not believe she was committed to the job because she had five children at home and he could not see how she could get anything done having five children, adding, "he can't get any work done when his teenage son was around him." Newcomb then stated: " 'Your number one job should be as a mother, and your job at Forest should be a secondary choice. Our children are our future, and you need to be home with them.' " He also told her: " 'You look older, more tired.' " He suggested she "go home and take a look in the mirror and be honest with [herself]," and in so many words that she needed to ask herself if she really thought she was still in her prime. He also commented she had done well in her younger years but asked her, " 'Don't you think it was only fair to have someone with fresh, younger eyes and spirit take over?' " He told her the sales representative position was demanding, and the months she took off for pregnancy leave was time the company could just not afford. According to Sanguinetti, Newcomb's comments to her that morning left her stunned and horrified, caused her to walk out of the meeting, and led her to take a leave of absence for work-related mental stress on November 16, 2009.

---

[4] Newcomb denies making the comments Sanguinetti attributed to him on November 3 and 4.

Sanguinetti returned to work 12 weeks later, on February 10, 2010, when her allowable leave time under the Family Medical Leave Act (FMLA)[5] had expired. In April 2010, a division manager for a different territory, Dennis Zavidny, rode with Sanguinetti. Zavidny had no knowledge of Sanguinetti or her prior discrimination complaints. He pointed out she had posted quarterly sales rankings of 98, 93, and 96 out of 106 sales representatives, and identified multiple areas in which her sales technique and effort were "in need of development."

Sanguinetti's father passed away in June 2010. Sanguinetti requested bereavement leave but Janice Goocher in the human resources department presented short-term disability leave based on work-related stress as an option, and Sanguinetti decided to take that. Sanguinetti asserted she was not able to work at that time because of the continued retaliation and hostile work environment she suffered from Toups and Newcomb that still caused her extreme stress. Forest continued to pay Sanguinetti her regular salary under its short-term disability program. On September 28, 2010, Forest's third party provider, Matrix Absence Management, denied Sanguinetti's application for benefits beyond July 30, 2010, but Forest continued to pay Sanguinetti her base salary beyond July 30, 2010. As of October 15, 2010, Sanguinetti was still unable to return to work or provide Forest with an anticipated date of return.[6] Forest decided to replace Sanguinetti in her territory, and terminated her employment as of November 21, 2010. According to Forest, the decision to terminate Sanguinetti was made by its human resources department in conjunction with its benefits department, and neither Toups nor Newcomb had any involvement in it.

## A. *Sanguinetti's DFEH Complaints*

Sanguinetti filed a discrimination charge with the California Department of Fair Employment and Housing (DFEH) on March 8, 2010, alleging gender discrimination and

---

[5] See title 29 United States Code section 2601 et seq. The California counterpart to FMLA is the California Family Rights Act (Gov. Code, § 12945.2; CFRA).

[6] Sanguinetti continued to claim disability to work and received state disability benefits until July 2011.

retaliation for taking pregnancy leave. She filed a second charge of discrimination with the DFEH on October 28, 2011, alleging she was terminated due to her disability. Sanguinetti did not check the box for or otherwise mention age discrimination in either of her DFEH complaints.

**B. *Present Litigation***

On February 14, 2012, Sanguinetti filed a complaint alleging 10 causes of action against Forest: (1) gender discrimination in violation of FEHA; (2) hostile work environment and harassment based on gender discrimination in violation of FEHA; (3) hostile work environment and harassment based on age discrimination in violation of FEHA; (4) failure to prevent and investigate discrimination and/or retaliation in violation of FEHA; (5) discrimination based on age in violation of FEHA; (6) retaliation in violation of FEHA; (7) denial of family medical leave under the CFRA; (8) failure to accommodate in violation of FEHA; (9) wrongful termination in violation of public policy; and (10) intentional infliction of emotional distress.

Forest filed a motion for summary judgment on November 30, 2012. The trial court granted the motion on March 14, 2013, and Sanguinetti timely appealed from the ensuing judgment.

## II. DISCUSSION

Sanguinetti challenges the trial court's summary adjudication of 7 of her 10 causes of action. She does not address the court's adverse rulings on her causes of action for failure to prevent discrimination, wrongful termination in violation of public policy, and intentional infliction of emotional distress.

**A. *Standard of Review***

On appeal after a trial court has granted summary judgment, we review the record de novo to determine whether the evidence submitted for and against the motion discloses material factual issues warranting a trial. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334–335 & fn. 7 (*Guz*).) We consider all of the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. (*Guz,* at p. 334.)

Summary judgment is properly granted when no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden of showing a cause of action has no merit by showing one or more of its elements cannot be established or there is a complete defense. (Code Civ. Proc., § 437c, subds. (a), (o)(1)–(2).) The defendant is not required to conclusively negate an element of the plaintiff's cause of action to meet that burden, but must present evidence showing the plaintiff does not possess and cannot reasonably obtain the needed evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854–855; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767–768.)

Once the defendant has met that burden, the burden shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted.)

In cases alleging adverse employment actions in violation of FEHA, the trial courts generally apply the same three-stage, burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. (See *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–804.) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." (*Guz, supra*, 24 Cal.4th at p. 354.) The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination, that is, evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144–1145 (*Trop*).) To make out a FEHA violation based on direct evidence, a causal connection must be shown between discriminatory attitudes by supervisors

8

expressed in words or actions and the adverse employment actions in issue.  (*Trop,* at pp. 1146–1149; see also *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 550 (*DeJung*).)

In a circumstantial case, the plaintiff bears the initial burden to establish a prima facie case of discrimination.  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.)  "Generally the plaintiff must provide evidence that (1) [s]he was a member of a protected class, (2) [s]he was . . . performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination . . . , and (4) some other circumstance suggests discriminatory motive."  (*Guz, supra,* 24 Cal.4th at p. 355.)

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to produce admissible evidence its action was taken for a legitimate, nondiscriminatory reason.  (*Guz, supra*, 24 Cal.4th at pp. 355–356.)  If the employer meets this burden, the presumption of discrimination is dispelled and it becomes the plaintiff's burden to prove the employer's proffered reasons were pretexts for discrimination or to offer any other evidence of discriminatory motive.  (*Id.* at p. 356.)  The plaintiff must produce specific, substantial evidence of pretext, and a triable issue of fact can be created only by a conflict of evidence, not by speculation or conjecture.  (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807.)

In *Guz*, the Supreme Court applied and elaborated on these principles in the specific context of an employer's motion for summary judgment.  The court explained that when the employer has set forth competent, creditable, admissible evidence of nondiscriminatory reasons for its termination of the plaintiff, the burden shifts to the plaintiff to show the existence of a triable issue that the termination was actually made on the prohibited basis.  (*Guz, supra*, 24 Cal.4th at p. 360.)  "[T]here must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions."  (*Id.* at p. 361.)

**B.** *Gender Discrimination*

In the trial court, Forest attacked Sanguinetti's gender discrimination cause of action on two grounds under the *McDonnell Douglas* test. First, citing evidence concerning Sanguinetti's substandard performance evaluations beginning in 2008 and her continued poor sales rankings that dated back to 2007, Forest maintained Sanguinetti could not demonstrate she was performing competently in her job. Second, based on evidence concerning the stated reasons for Sanguinetti's termination in 2010—her failure to return to work or state when she could return to work following her short-term disability leave—Forest contended there was no evidence these reasons were pretextual. The trial court found Forest met its initial burden of producing evidence negating these elements of Sanguinetti's cause of action. The court found Sanguinetti failed to meet her burden of producing evidence sufficient to show a triable issue of material fact with respect to either issue.

**1.** *Direct Evidence*

Sanguinetti does not dispute the court's finding that Forest met its initial burden of producing evidence negating competent job performance and unlawful motive for termination. She maintains, however, she was not required to produce evidence showing a triable issue on either point because she presented *direct* evidence of bias. The direct evidence consisted of her testimony concerning the comments Toups and Newcomb made to her at various times in 2008 and 2009, disparaging her pregnancy and displaying a stereotyped view of women's domestic roles. According to Sanguinetti, these comments provide direct evidence of discriminatory animus only *as to the substandard performance evaluations and written warning she received*. She does not argue the comments constitute direct evidence her later termination in October 2010 was motivated by gender discrimination.[7]

_____

[7] Sanguinetti does suggest for the first time in her reply brief the comments by Toups and Newcomb constitute direct evidence of discriminatory animus in her termination. We do not consider issues raised for the first time in an appellant's reply brief. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11

10

Sanguinetti contends the performance evaluations and warning letter were actionable "adverse employment actions" that were "embedded" in and encompassed by her sex discrimination cause of action, but were left unaddressed by the trial court's summary adjudication rulings. She relies on the following allegation in paragraph 92 of her complaint (hereafter paragraph 92): "[Forest] discriminated against Plaintiff in training, hiring, demotion/promotion, termination; and punishment in retaliation for opposing discrimination or otherwise protecting her rights as an employee. When Plaintiff objected to the practice, she was harassed, denied accommodations, threatened, put on a performance improvement plan, then terminated in retaliation for her complaints."

In reviewing a ruling on a summary judgment motion, an appellate court must identify the issues framed by the pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.) It is these allegations to which the moving party must either establish a complete defense or show there is no factual basis for relief on any theory reasonably contemplated by its opponent's pleading. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) In our view, paragraph 92 does not reasonably contemplate the theory Sanguinetti is now putting forward on appeal—that the negative performance evaluations and warning letter she received starting in 2008 were adverse employment actions resulting from gender discrimination. There is no allegation or evidence any these of actions constituted a demotion in Sanguinetti's job title or salary, or the denial of a promotion. To the extent Sanguinetti is claiming the evaluations and warning constituted punishments, threats, acts of harassment or being "put on a performance improvement plan," the only theory expressed in paragraph 92 is that acts falling into these categories were done *in retaliation for* her

_____

(*Varjabedian*).) In any event, as discussed *post*, Sanguinetti failed to produce evidence creating a triable issue of fact as to whether Toups or Newcomb had any involvement in the eventual decision to discharge her.

complaint of gender discrimination.[8]  Gender discrimination and retaliation are distinct legal theories.  (Cf. Gov. Code, § 12940, subds. (a) & (h).)  Sanguinetti's retaliation theory is alleged in a separate cause of action, which is considered below.  But for purposes of defining the scope of Sanguinetti's first cause of action for gender discrimination, we find no allegation her negative performance evaluations were adverse employment actions resulting from gender bias.  Since the theory was not pleaded, Forest had no obligation to show there was no factual basis for it, and it is wholly immaterial whether Sanguinetti's evidence in support of it was direct or only circumstantial.  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 [defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers].)[9]

Sanguinetti's new gender discrimination theory also fails for a separate and independent reason.  The negative performance reviews and formal warning she received were not separately actionable under FEHA.  Adverse actions "reasonably likely to do no more than anger or upset an employee" are insufficient.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1054.)  The employer's action must "materially affect[] the terms, conditions, or privileges of employment," by being "reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." (*Id.* at pp. 1054–1055.)

---

[8] We note Sanguinetti's retaliation theory is difficult to sustain on its own terms. There is no evidence Toups knew of Sanguinetti's discrimination complaint until approximately July 30, 2009.  This was *after* she had already received several negative performance evaluations and a formal warning letter from him.  Two other Forest employees with no knowledge of her discrimination complaints, McCaul and Zavidny, also gave her negative evaluations.

[9] Sanguinetti did not in fact assert the theory of an "embedded" cause of action for gender discrimination based on her negative performance reviews prior to this appeal. We may "deem an argument raised in an appeal from a grant of summary judgment waived if it was not raised below and requires consideration of new factual questions," such as facts not asserted in the opposition separate statement.  (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1488.)

" '[F]ormal criticism or poor performance evaluations are [not] necessarily adverse actions' and they should not be considered such if they did not 'affect[] the [employee's] grade or salary.' " (*Taylor v. Small* (D.C.Cir. 2003) 350 F.3d 1286, 1293; see also *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 392 (*McRae*) [letter of instruction did not rise to the level of an adverse employment action].)  Even a possibility of termination mentioned in a performance improvement plan "was contingent on future developments, rather than being a present plan or decision" and therefore did not constitute an adverse employment action where the employee continued to work in the same job with the same benefits.  (*Agnew v. BASF Corp.* (6th Cir. 2002) 286 F.3d 307, 310; see also *Grube v. Lau Industries, Inc.* (7th Cir. 2001) 257 F.3d 723, 729 ["unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"].)  Written criticisms alone are inadequate to support a FEHA claim unless the employer wrongfully uses the negative evaluation to substantially and materially change the terms and conditions of employment.  (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1457.)  There is no evidence Sanguinetti's negative performance evaluations or the formal warning she was given in 2009 were used to materially change the terms and conditions of her employment.  She was not demoted or reassigned.  Her compensation and benefits were not reduced.  There was no other material adverse change in her work hours, conditions, privileges, or responsibilities.  Thus, even assuming Sanguinetti properly alleged a gender discrimination theory based on her negative performance reviews and formal warning, and did not waive the theory by failing to assert it in the trial court, these actions do not support a claim under FEHA.

As noted, Sanguinetti made no timely argument she can produce direct evidence the one adverse employment action she did suffer—her termination from employment in November 2010—resulted from gender bias.  Such an argument would fail in any event because she has produced no evidence of a causal link between the comments and attitudes she attributes to Toups and Newcomb and her later termination.

## 2. *Circumstantial Evidence*

Putting aside Sanguinetti's direct evidence claim, Sanguinetti also maintains she met her burden of producing evidence of satisfactory performance under *McDonnell Douglas*. She relies on an August 6, 2010 e-mail from Toups to McDonald and Newcomb inquiring as to Sanguinetti's leave status and requesting a sales representative be assigned to cover her territory during her leave. The e-mail states the territory continued to underperform and one of several reasons for this was that, unlike some other sales territories established by Forest, no one was assigned to cover it when the regular sales representative was out on leave. Because Sanguinetti's territory had been empty for an extended period over the previous two years, Toups posited this had a direct adverse effect on its sales productivity and ranking. According to Sanguinetti, this e-mail creates a triable issue of fact as to whether her substandard sales performance was caused by the policies of her employer rather than by any incompetence on her part.

We are not persuaded. The evidence showed Sanguinetti's sales performance already ranked near the bottom of Forest's hospital sales representatives by the end of 2007, which was approximately eight months before she began her maternity leave, and it showed no improvement during either the eight months she worked in 2008, or the 10 months she worked in 2009.[10] Toups's e-mail by itself does not establish the sales ranking system used to evaluate her performance was calculated in a fashion that unfairly penalized representatives whose territories were not covered during leaves of absence. Sanguinetti had an opportunity to take discovery on this issue and it was her burden to come forward with evidence sufficient, if credited, to show her job performance was not fairly reflected in her sales results and below-standard evaluations. The Toups e-mail does not satisfy that burden.

In addition, Sanguinetti failed to come forward with evidence showing the ostensible reason for her discharge was mere pretext. She failed to produce evidence

---

[10] There was evidence of a fleeting sales improvement for the month of January 2009.

14

creating a triable issue of fact as to whether Toups or Newcomb had any involvement in the eventual decision to discharge her, or statistical evidence tending to show male employees of Forest taking extended leaves received more favorable treatment than she did. We could find no argument on these points in Sanguinetti's opening brief. While Sanguinetti does belatedly address the issue of Toups's influence on the termination decision in her reply brief, she relies on the August 10 Toups e-mail in which he merely inquired about getting sales coverage in her territory during her leave of absence. As noted, we need not consider arguments raised for the first time in an appellant's reply brief. (*Varjabedian*, *supra*, 20 Cal.3d at p. 295, fn. 11.) In any event, taking fully into account the gender biased remarks allegedly made by Toups and Newcomb, we do not believe the totality of Sanguinetti's pretext evidence is sufficient to meet her burden on that issue under *McDonnell Douglas*. *Reid v. Google, Inc.* (2010) 50 Cal.4th 512 (*Reid*), cited by Sanguinetti, is distinguishable. The Supreme Court held in *Reid* that discriminatory remarks made by non-decision makers, when combined with other evidence creating an inference of linkage between discriminatory attitudes toward the plaintiff and the decision to discharge him, could be sufficient to support denial of summary judgment for the employer in a FEHA case. (*Reid,* at p. 545.) In *Reid*, that evidence included shifting rationales offered for the plaintiff's termination, and statistical evidence of discrimination at the company. (*Ibid.*) We find no comparable evidence here.[11]

Summary adjudication was properly granted on Sanguinetti's first cause of action for gender discrimination. She failed to produce evidence meeting her burden of

---

[11] Sanguinetti also cites *Back v. Hastings on Hudson Union Free School Dist.* (2d Cir. 2004) 365 F.3d 107 for the proposition that evidence of gender stereotyping remarks by nondecision makers, without more, "may . . . be sufficient evidence of an impermissible, sex-based motive for an adverse employment decision to survive summary judgment." That is not the holding of *Back*. As the court in *Back* explained, the comments in issue drew a direct link between the gender stereotypes and the conclusion that the plaintiff should not be tenured, and "were made by supervisors who played a substantial role in the decision to terminate." (*Id.* at p. 124, fn. 12.) We have no such facts here.

15

production under the *McDonnell Douglas* test. She cannot raise a new theory outside of her pleadings based solely on her negative performance evaluations and formal warning. And such a theory is not viable in any event because the evaluations are not adverse employment actions.

**C.** *Gender-based Hostile Work Environment*

In order to establish a hostile work environment based on gender, Sanguinetti must prove (1) she was subjected to verbal or physical conduct that was gender-based; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive that it altered the conditions of her employment and created a hostile or abusive work environment. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279 (*Lyle*); *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1059.) "[A]n employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." (*Lyle,* at p. 283.) To be actionable as a change in the terms and conditions of employment under FEHA, the conduct must be extreme. (*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 161.)

The trial court held in this case the gender-based comments on which Sanguinetti relied were made on five days, which was insufficient to be either pervasive or severe, and were not of such a nature as to alter the conditions of employment. On appeal, Sanguinetti cites evidence of the following comments and actions as creating a triable issue of material fact concerning her gender-based hostile work environment cause of action: (1) the substandard evaluations given to her immediately after she returned from maternity leave in January and February 2009; (2) Toups's statements to her in that time period—assertedly delivered with angry affect—that " 'Your family is affecting my money,' " and she must "suffer the consequences" of taking so much time off; (3) Toups's and Newcomb's questioning of her during the six-hour luncheon meeting on November 3, 2009, about how much time she spent with her children, who picked them up from school and other family matters, and Newcomb's deferral of her requests for

16

lunch and to use the restroom; and (4) Newcomb's statements to her the next day to the effect she should be at home with her children and doing something less demanding, and questioning her commitment to the job.

The remarks Sanguinetti attributes to Toups and Newcomb certainly conveyed offensive attitudes and stereotypes about the compatibility of pregnancy and motherhood with commitment to a career. However, we agree with the trial court the remarks cannot be considered severe or aggravated. Further, they were made to Sanguinetti at such widely scattered times it is hard to characterize them as reflecting "a concerted pattern of harassment of a repeated, routine, or a generalized nature." (*Lyle*, *supra*, 38 Cal.4th at p. 383; see also *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 144–145 [offensive comments made on three occasions over a five-week period "fall far short" of establishing a hostile work environment]. )

The negative performance evaluations Sanguinetti received add little to the picture. Evaluations and reviews, including negative ratings, are part of any job. There is no evidence the timing of the January and February 2009 evaluations was not consistent with company policy.[12] The evaluations expressed praise for Sanguinetti's professionalism and effort. Her negative ratings were based on her indisputably poor sales results—virtually last among all hospital sales representatives nationally—which had declined well before her pregnancy leave.[13] Neither her 2009 evaluations, nor the brief delays in letting Sanguinetti use the restroom or get food during the working luncheon meeting in November 2009 are so objectively unreasonable or demonstrably gender-based as to support a claim of hostile working environment.

_____

[12] The evaluation given to her in January was her midyear fiscal year 2009 evaluation which would have been given to her toward the end of 2008 had she not been out on maternity leave. The February 2009 evaluation was the standard evaluation given after a field ride.

[13] According to the April 27, 2009 evaluation, her inability to reach sales goals had been discussed with her continuously since January 2008. For the nine months ending in December 2007, she ranked 102 in sales out of 104 hospital representatives nationally.

The trial court properly granted summary adjudication to Forest on Sanguinetti's second cause of action for gender-based hostile working environment/harassment.

**D.** *Age Discrimination Causes of Action*

Sanguinetti alleged causes of action for discrimination and hostile work environment based on age, relying heavily on Newcomb's alleged comments to her on November 3 and 4, 2009 suggesting she should look into coloring her gray hair, telling her she looked older and more tired, proposing it was only fair to have someone with fresh, younger eyes and spirit take over, and asking her whether it was time to retire. With respect to Sanguinetti's third cause of action for age-based hostile work environment, the trial court held Sanguinetti had not produced evidence from which a reasonable fact finder could conclude the conduct of Forest's employees toward her was severe or pervasive. Regarding the fifth cause of action for age discrimination, the court found Forest met its burden of producing evidence Sanguinetti's job performance was unsatisfactory and it discharged her for nondiscriminatory reasons, and Sanguinetti failed to produce evidence raising a disputed issue of fact as to either element. The court did not reach Forest's alternative ground for its motion on both causes of action that Sanguinetti failed to exhaust her administrative remedies with respect to age discrimination.

As an initial matter, we find both causes of action are barred because the undisputed facts demonstrate Sanguinetti failed to exhaust her administrative remedies with respect to age discrimination. Her two DFEH discrimination complaints alleged gender discrimination, retaliation for taking pregnancy leave, and termination due to disability. She did not check the box for or otherwise mention age discrimination in either of her administrative complaints. Both complaints were submitted after the comments alleged to have been made on November 4, 2009.

A plaintiff bringing a civil claim under the FEHA must first exhaust the administrative remedies provided by law. (*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1121 (*Yurick*).) This requires filing a written charge with the DFEH within one year of the alleged unlawful employment discrimination, and obtaining

18

notice from the DFEH of the right to sue. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492; *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613.) The scope of the written charge defines the permissible scope of the subsequent civil complaint (*Yurick,* at pp. 1121–1123 ), and allegations in the civil complaint that fall outside the scope of the administrative charge are barred for failure to exhaust (*Rodriguez v. Airborne Express* (9th Cir. 2001) 265 F.3d 890, 897).

"The failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect," and thus constitutes a sufficient ground for a defense summary judgment. (*Miller v. United Airlines, Inc*. (1985) 174 Cal.App.3d 878, 890.) However, these FEHA procedural requirements, as with all provisions of the FEHA, are to "be construed liberally for the accomplishment of the purposes of [the FEHA]." (Gov. Code, § 12993, subd. (a).) Both California courts and courts from other jurisdictions have endorsed the "like or reasonably related" standard, which provides that the allegations in a civil suit are within the scope of an administrative investigation which can reasonably be expected to grow out of the charge of discrimination. (*Sandhu v. Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846, 858–859 [holding an allegation of racial discrimination would encompass claim for national origin discrimination].)

Applying the "like or reasonably related" standard, the Court of Appeal in *Yurick*, *supra,* 209 Cal.App.3d at pages 1121–1122, held a DFEH complaint for gender discrimination did not exhaust administrative remedies on a claim for age harassment. In *Rodriguez v. Airborne Express*, the Ninth Circuit held a charge of discrimination based on race did not permit a civil action for discrimination based on disability. (*Rodriguez v. Airborne Express, supra,* 265 F.3d at p. 897; see also *Stallcop v. Kaiser Foundation Hospitals* (9th Cir. 1987) 820 F.2d 1044, 1050 [allegations of sex and age discrimination in civil complaint were not encompassed by DFEH charge alleging only national origin discrimination]; *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1725–1730 [exhaustion doctrine precludes plaintiff from pursuing claims for gender discrimination, harassment, and retaliation when the only claim she filed with DFEH was for age discrimination].) Based on these authorities, we find the allegation Forest

19

discriminated against Sanguinetti because of her age was not like or reasonably related to a claim of discrimination based on her gender, pregnancy, or stress disability, and was not likely to have been uncovered in any investigation of these latter charges.

Sanguinetti asserts she satisfied the exhaustion requirement for her age discrimination claim because she filled out a precomplaint DFEH questionnaire referencing age discrimination. However, the trial court sustained Forest's evidentiary objections to the questionnaire. In reviewing the granting of a motion for summary judgment we "consider[] all the evidence set forth in the moving and opposition papers *except that to which objections have been made and sustained.*" (*Guz*, *supra*, 24 Cal.4th at p. 334; italics added.) Contrary to Sanguinetti's suggestion in her reply papers, the objection sustained was to the document itself, not to the accompanying attorney declaration. We do not consider Sanguinetti's further argument the document was appropriate evidence for summary judgment and she otherwise satisfied the exhaustion requirement, which was raised for the first time in her reply brief. (*Varjabedian*, *supra*, 20 Cal.3d at p. 295, fn. 11.)

In any event, even assuming for purposes of analysis Sanguinetti's age discrimination claims could properly be asserted in this civil action, summary adjudication was properly granted on them. Even if offensive, the remarks and conduct upon which Sanguinetti bases her fifth cause of action (age-based harassment/hostile work environment) were even more isolated and sporadic than those supporting her gender-based hostile work environment claim. The alleged events occurred on two days in 2009, and were simply not so extreme, pervasive, or sustained as to alter the terms and conditions of Sanguinetti's employment. As to her third cause of action for age discrimination, Sanguinetti again takes the position she had no burden to come forward with evidence of satisfactory performance under *McDonnell Douglas* because the comments allegedly made to her by Toups and Newcomb on November 3 and 4, 2009, constituted direct evidence of age bias. We disagree. She has not established any causal relationship between the alleged age biases held by Toups and Newcomb and any adverse employment action taken against her. (*Trop, supra*, 129 Cal.App.4th at pp. 1146–1149;

20

*DeJung*, *supra*, 169 Cal.App.4th at p. 550.) Her opening brief does not even touch upon the issue of causation. For the reasons stated earlier in connection with her gender discrimination claim, Sanguinetti also failed to meet her burden under *McDonnell Douglas* of coming forward with evidence of satisfactory job performance or of pretext in the reason given for her termination.

### E. *Retaliation*

Sanguinetti alleged as follows in her retaliation cause of action: "Because of having opposed employment practices based on her age, gender, and pregnancy, Plaintiff has suffered the following adverse employment actions: termination; denial of accommodations; retaliatory write ups; put on a performance improvement plan; denial of promotion; denial of stock compensation and options, and denial of employment." The trial court held Forest met its burden of production by producing evidence that approximately a year and a half intervened between the claimed protected activity (Sanguinetti's submission of complaints to Bonnie McDonald in March and July 2009) and the claimed adverse action (the termination of her employment).

On appeal, Sanguinetti does not argue she met her burden of producing evidence her discharge was retaliatory. She also does not claim to have evidence of any retaliatory denial of a promotion or of stock compensation and options. She faults the trial court for not addressing whether the formal warning letter she received from Toups on February 24, 2009, a personal development plan she was given in April 2009, and the company's denials of accommodations she sought for the care of her infant children at various times starting in 2008, qualified as adverse employment actions.[14]

To make out a prima facie claim of retaliation, Sanguinetti must establish (1) she engaged in protected activity, (2) experienced an adverse employment action, and

---

[14] She alleges she called Toups in December 2008 and asked him to excuse her from attending a meeting scheduled for February 2–5, 2009 in San Diego so she could continue to nurse her newborn twin sons, but he refused. In April 2009, she was refused a private room she requested for an upcoming business trip to ensure privacy when pumping milk. She alleges later requests to be excused from meetings were refused or ignored in October 2009 and March 2010.

21

(3) there is a causal connection between them. (*Haberman v. Cengage Learning, Inc.* (2009) 180 Cal.App.4th 365, 386–387.) In our view, Sanguinetti's showing on the second and third elements falls short.

For the reasons previously discussed, the formal warning letter and personal development plan do not qualify as adverse employment actions because they did not result in a material change in the terms and conditions of Sanguinetti's employment. (*Akers v. County of San Diego*, *supra*, 95 Cal.App.4th at p. 1457.) Neither did the actions of Toups and Forest in allegedly refusing her requests to be excused from meetings or allowed to have a private room. Although possibly inconvenient or irritating, the refusal of a request to be excused from a mandatory company-wide meeting when medically able to attend or to receive preferential hotel accommodations is not the type of tangible injury that would be considered an adverse employment action. (See *McRae*, *supra*, 142 Cal.App.4th at pp. 393–394.) Viewed individually or collectively, the actions Sanguinetti alleged as the basis for her retaliation claim did not constitute or result in a material change in the conditions and terms of her employment.

In addition, the facts do not support an inference the actions taken by Forest were causally connected to any protected activity. Sanguinetti claims she first complained of discrimination in a conversation with Toups during a field ride in February 2009. One of the actions she asserts was retaliatory—the refusal of her December 2008 request to be excused from an upcoming meeting—had already occurred by that time. Her first formal discrimination complaint came in her March 17, 2009 letter to McDonald. But by February 2009, her sales results had been near the bottom among Forest's hospital sales representatives dating back to the latter half of 2007, and nothing she did after that point demonstrated improvement in that objective performance measure. In light of this, timing alone—the mere fact Sanguinetti *continued* to receive substandard performance evaluations and was put on a performance improvement plan *after* she submitted her complaint— is insufficient to support an inference of causation. (See *Slattery v. Swiss Reinsurance America Corp.* (2d Cir. 2001) 248 F.3d 87, 95 ["Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the

22

plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."].)

Summary adjudication was properly granted on Sanguinetti's retaliation cause of action.

## F. *Violation of CFRA*

Sanguinetti alleged Forest violated the CFRA by refusing to extend her family medical leave. In its motion for summary judgment, Forest produced evidence Sanguinetti received the full amount of unpaid leave required by the statute— 12 workweeks in any 12-month period. (Gov. Code, § 12945.2, subd. (a).) The evidence showed Sanguinetti received 12 weeks of leave between November 16, 2009 and February 10, 2010, and then took an additional 20 weeks of leave between June 8, 2010 and her termination on October 15, 2010. The trial court found Sanguinetti failed to produce evidence to show there was an issue of fact as to whether she was provided the proper amount of leave.

Sanguinetti's sole contention on appeal is that there was an entirely distinct CFRA violation claim embedded in her CFRA cause of action that was not addressed by Forest's motion or by the trial court. Sanguinetti alleged in paragraph 26 of her complaint that after Toups declined her December 2008 request to be excused from the upcoming San Diego meeting in early February, she asked him if she could instead use family leave to take that time off. Toups told her he would contact human resources and informed her the next day her request for leave had been denied. However, Sanguinetti's cause of action for violation of the CFRA does not allege any leave request as a basis for the cause of action other than her 2010 request to extend her family medical leave. Her pleadings cannot reasonably be interpreted to allege a CFRA violation based on the facts alleged in paragraph 26 of the complaint. Summary adjudication of this cause of action was therefore properly granted.

## G. *Failure to Accommodate Disability*

Sanguinetti's eighth cause of action for failure to accommodate her disability under FEHA included the following pertinent allegations: "183. Plaintiff's pregnancy is

a disability as defined by [FEHA].  Plaintiff was forced to take FMLA due to stress.  Plaintiff's physical disability was known to defendants.  Plaintiff was terminated while on leave. [¶] 184. Thereafter, Defendants wrongfully and unlawfully refused to make any 'reasonable accommodation' for Plaintiff's known physical disability as that term is defined by Govt. Code Section 12926[, subdivision] (m)."

The trial court found Forest met its burden of producing evidence negating two elements of Sanguinetti's cause of action:  (1) she was a qualified individual and (2) Forest failed to accommodate her alleged disability.[15]  The court found Sanguinetti failed to meet her burden of producing evidence showing a triable issue of fact existed with respect to either element.  Forest's motion was premised on the assumption the disability in question was Sanguinetti's stress disability in 2009 and 2010, rather than her pregnancy in 2008.  It cited as undisputed facts her admission in deposition she never requested any accommodation from Forest with respect to her stress disability, as well as the fact she admitted she was not able to work until July 2011 due to that disability, and was therefore not a qualified person under FEHA.

Sanguinetti responded to Forest's motion by citing triable issues of fact with respect to whether Forest failed to accommodate her pregnancy disability by refusing to excuse her from the San Diego meeting so she could stay in California to breastfeed her twins, and refusing to provide her with a private room so she could pump breast milk.  On appeal, she contends her complaint alleged a failure to accommodate two disabilities—pregnancy and stress.  According to Sanguinetti, the silence of Forest's moving papers on her failure-to-accommodate-pregnancy claim requires denial of the motion as to her eighth cause of action.  (See *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1606 [if moving party fails to meet burden of production, nonmoving party has no

---

[15] The essential elements of a failure to accommodate claim are (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability.  (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 766.)

24

burden of showing there is a triable issue of fact]; Code Civ. Proc., § 437c, subd. (f)(1) ["A motion for summary adjudication shall be granted only if it completely disposes of a cause of action . . . ."].)

Forest's failure to address Sanguinetti's asserted pregnancy-based failure to accommodate claim is understandable. Her eighth cause of action had two operative sentences describing Forest's alleged wrongful conduct. It alleged Sanguinetti was terminated while on leave, and, in the next paragraph it alleged, "*Thereafter*, Defendants wrongfully and unlawfully refused" to make any accommodation for her disability. (Italics added.) Neither sentence alleges wrongful conduct with respect to Sanguinetti's pregnancy in 2008. Although paragraph 183 did allege pregnancy was a disability for FEHA purposes, and the cause of action did incorporate by reference three earlier paragraphs alleging Forest refused Sanguinetti's requests for *postpregnancy* accommodations for breastfeeding, Sanguinetti's complaint was at a minimum highly ambiguous as to the facts alleged to constitute a failure to accommodate. However, even assuming for the sake of analysis Forest was not entitled to summary adjudication of Sanguinetti's eighth cause of action without producing evidence negating the pregnancy disability theory "embedded" in it, "no good would result from sending the case back for a new trial, as it is apparent that the result would necessarily be the same, under the evidence of the [plaintiff herself]." (*Lompoc Produce etc. Co. v. Browne* (1919) 41 Cal.App. 607, 613.)

It was undisputed Sanguinetti was no longer pregnant and had returned to work without restrictions by the time the requested accommodations were to have been made. Therefore, she had no disability at those times. Moreover, Sanguinetti cites no case holding FEHA requires employers to afford reasonable accommodations to women engaged in breastfeeding or breast pumping. (Cf. *Martinez v. N.B.C., Inc.* (S.D.N.Y. 1999) 49 F.Supp.2d 305, 309 [no such requirement under Americans with Disabilities Act of 1990]; *Barrash v. Bowen* (4th Cir. 1988) 846 F.2d 927, 931–932 [denial of personal leave for breastfeeding does not violate Pregnancy Discrimination Act of 1978].) The reasonable accommodation provisions of Government Code

25

section 12945 in particular are "narrowly drawn to cover only the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions." (*California Federal S. & L. Assn. v. Guerra* (1987) 479 U.S. 272, 290.) While the California Labor Code requires employers to make certain accommodations for breastfeeding mothers (see Lab. Code, § 1030 et seq.), these provisions are enforceable by a civil penalty of $100 per violation (Lab. Code, § 1033). We find no statutory or case law support for a FEHA cause of action premised on an employer's failure to accommodate lactation.

Accordingly, any assumed error under Code of Civil Procedure section 437c, subdivision (f)(1) in granting summary adjudication of Sanguinetti's eighth cause of action was harmless. (See *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1307 [error harmless when subsequent summary judgment on statute-of-limitations grounds would have disposed of claims erroneously dismissed on demurrer]; *Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97, 113–114 [procedural errors in granting summary adjudication were harmless where trial court's decision was correct in result].)

## H. *Fourth, Ninth, and Tenth Causes of Action*

As noted, Sanguinetti presents no argument the trial court erred in granting summary adjudication of her causes of action for failure to investigate and prevent discrimination or retaliation, wrongful termination in violation of public policy, or intentional infliction of emotional distress. Because all three causes of action depended on the viability of one or more of her other causes of action, summary adjudication of these claims, and summary judgment in favor of Forest, were properly granted.

## III. DISPOSITION

The judgment is affirmed.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.